No. 31,778

WESTERN GRAIN DEALERS MUTUAL FIRE INSURANCE COMPANY, *Appellant*, v. GARRISON INSURANCE AGENCY, consisting of W. M. GARRISON, C. M. GARRISON and JOHN DOE GARRISON; W. M. GARRISON and C. M. GARRISON, *Appellees*.

(33 P. 2d 950.)

Opinion filed July 7, 1934.

*C. W. Burch, B. I. Litowich, La Rue Royce,* all of Salina, *Henry E. Sampson* and *Sidney J. Dillon,* both of Des Moines, Ia., for the appellant.

*Z. C. Millikin,* of Salina, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action by an insurance company against its general agency for the state for a balance claimed to be due on account for premiums collected by defendants and not remitted to plaintiff. Defendants deny the correctness of the account, and by cross petition claim additional commissions due under a modification of the agency contract by a subsequent agreement. The trial court found for defendants. Plaintiff has appealed, and presents two questions: (1) Does the evidence sustain a finding that the agency contract was modified by a subsequent agreement; and (2), if so, were commissions due defendants under such modified contracts correctly computed?

Plaintiff is a mutual fire and tornado insurance company organized under the laws of Iowa, with headquarters at Des Moines, and was authorized to do business in Kansas. Defendants for many years have been insurance agents at Salina, Kan. On August 1, 1926, plaintiff and defendants entered into a general agency con-

tract by which plaintiff appointed defendants as its general agency for the state of Kansas for its fire and tornado business, in which defendants agreed to act with diligence and energy in soliciting insurance and promoting the general welfare and interests of plaintiff, to send daily reports for policies written, collect premiums on policies and make regular remittances thereof to plaintiff, to have each risk carefully inspected, and report to plaintiff all information coming to their knowledge pertaining to the risk which will be of value to plaintiff. Defendants had authority to appoint subagents, to accept applications for insurance, being responsible for all applications taken and for collection of premiums on such policies, plaintiff to procure the licenses for such subagents; and in consideration thereof plaintiff agreed "to pay the said agency twenty-seven and one-half per cent (27½%) commission on gross premiums at the rates named in policies written," the rates used to be the tariff rates as published for the Kansas Inspection Bureau. There was a provision for adjusting commissions on canceled policies, and for the modification in writing of the contract from time to time as might be agreed upon, and for its termination by either party on thirty days' written notice. Under this agreement defendants established approximately one hundred subagencies in Kansas and paid their commission out of that allowed defendants by plaintiff. It appears from the evidence that the expense of establishing, maintaining and looking after these subagencies was such that defendants thought they should be allowed more commission by plaintiff, and the matter was discussed between their representatives at various times. On December 29, 1927, defendants wrote plaintiff:

"As I think C. M. mentioned to you when in Des Moines, we would like a somewhat different agreement than the one we were working under at that time. We have just signed a new contract with the Wisconsin Automobile Company, and have made a copy of it, except for the change in name, which we will inclose. We would like for you to look it over, and if it meets with your approval, have two copies made in somewhat better shape than this one and we will execute our part of it. . . . Our general agency is costing us 200 per cent each month, but we feel sure it will repay in the future. . . ."

The contract inclosed with that letter was dated January 2, 1928, and was a rewriting of the contract of August 1, 1926, and following the paragraph with respect to commission, the substance of which was previously stated, was this:

"(a) It is further agreed that the commission stipulated in the preceding paragraph shall be increased one-half of one per cent for each one per cent

decreased below 45 per cent loss ratio, (incurred basis) on business. It is provided, however, that it shall not exceed 5 per cent additional for any one year. (*b*) It is hereby mutually agreed that the contingent commission agreement hereinbefore referred to shall apply and be effective on the basis of business transacted by and between said parties hereto during the calendar year January 1 and to December 31, inc., and likewise in future years during the life of this contract. . . ."

On December 30, 1927, plaintiff wrote as follows:

"We have your letter of December 29 at hand with the inclosure of a contract which you propose. . . . At this time we are very busy . . . and are asking that you give us a couple of weeks to go over the contract before making a reply. I believe that we can work out a contract which will give you the credit for a loss ratio on the basis of earned premiums, which will be favorable to your agency and to this company. . . ."

On January 2, 1928, defendants replied, consenting to postponement for a short time, and asking to be advised when plaintiff was ready to take the matter up. On February 28, 1928, plaintiff wrote:

"In regard to the contract giving you a contingent profit for a new loss ratio on business in Kansas, we are pleased to give you such a contract, but we find that the contract which you inclose does not entirely agree with our idea of a perfect contract.

"We are asking the privilege of rewriting this contract *with the idea that the contingent feature is to be the same as shown in the one submitted by you.* It is our understanding that the one you submit is a copy of the one you have with the Wisconsin auto." (Italics in letters are ours.)

On May 4, acknowledging receipt of defendant's letter of April 27, plaintiff's secretary wrote that he had been out of the office and—

". . . have been unable to make up the new contract which we had intended to place in force. In any event you may be sure that we will place this contract in force in the very near future, giving you a bonus for a low loss ratio on your business. . . ."

There was further delay on this point in the correspondence, but on September 28, 1928, plaintiff wrote, acknowledging defendants' letter of September 26, stating that the writer was leaving town for the next week, and—

". . . it will be almost impossible to fix your contract in regard to the contingent commission. However, it is our intention that this be given to you, and *this letter will be your assurance that contingent commission will be given as suggested in our previous correspondence.*"

Later correspondence disclosed that defendants repeatedly requested plaintiff to furnish a statement of losses in Kansas. Some information of that kind was furnished, but defendants complained that it was not sufficiently complete.

On December 16, 1930, the agency relation between plaintiff and defendants was terminated in writing by mutual agreement as of the date of January 15, 1931. Defendants kept asking for the statement of losses covering the years 1928, 1929 and 1930. It was finally submitted in July, 1931, computed on an earned premium basis. On August 17, 1931, defendants wrote:

"We have studied the 'Lost Ratio reports' and find they do not comply with the agreement in the contract agreed to between us. . . . 'It is plain, however, that there was no contingent commission earned during either 1928 or 1929 *from these reports. . . . It is our contention that this agreement was on premiums written, that the agreement shows that,* but we also think that on premiums earned, with the 1930 figured as the agreement provided, will show we are entitled to 5 per cent added commission on that year's business. . . ."

Perhaps to force a settlement with respect to the contingent premiums defendants declined to pay certain commissions on 1930 business figured on the 27½ per cent basis, and when plaintiff sued to recover such premiums, by cross petition defendants sought to establish what they claimed to be due them on the contingent premium business.

The legal question presented is whether or not this correspondence amounted to an agreement for a contingent premium in addition to the 27½ per cent provided in the contract of August 1, 1926. Defendants made a definite proposal in their letter and form of contract of December 27, 1927. It will be noted that plaintiff asked for time to consider it, and later wrote that something might be worked out on an earned premium basis; at another time wrote they planned to give defendants a bonus of some kind, but finally, in the letter of September 28, 1928, specifically stated:

"This letter will be your assurance that contingent commission will be given as suggested in our previous correspondence."

Their previous correspondence had referred to only one definite thing—the proposal made by defendants December 27, 1927, and which plaintiff had asked in its letter of February 28, 1928, the privilege of rewriting, "with the idea that the contingent feature is to be the same as shown in the one submitted by you." It was further identified as "a copy of the one you have with the Wisconsin auto." It seems clear that this was the only definite proposition submitted, and that these two letters of the plaintiff of February 28 and September 28, 1928, make it clear that the contingent com-

mission provided for in the copy of the contract proposed by defendants was definitely agreed to.

All these letters above mentioned on behalf of the plaintiff were written by D. O. Milligan, plaintiff's secretary. In the court below, and here, plaintiff argues that his authority to write those letters and to make any commission contract on behalf of the company was not shown. The point is not well taken. In defendants' cross petition it is specifically alleged that D. O. Milligan was at all times mentioned the secretary and general manager of plaintiff and had general authority to conduct all business on behalf of plaintiff, and was duly authorized, as its agent, to negotiate for and make on its behalf modifications of such contracts with its agents, and especially modifications of the contract between plaintiff and defendants. This allegation of agency and authority was not denied under oath, and hence was admitted by the pleadings. In this connection it is worthy of note that the contract of August 1, 1926, between plaintiff and defendants was executed on behalf of plaintiff by their assistant secretary, whose authority to do so has never been questioned. The trial court was authorized under the evidence to find that a contract for contingent commission was agreed upon between the parties.

At the trial plaintiff introduced the carbon copy of a letter dated November 13, 1928, the original of which it was claimed was mailed to defendants. This letter purports to advise defendants that the matter of contingent commission in connection with their agency had been gone over, giving some figures; that it would result in loss to plaintiff, and advising that the board of directors would not consent to such a contract, and expressed the hope that defendants would see plaintiff's viewpoint and go ahead on the terms of the present contract. Defendants disclaimed receiving such a letter. There was a sharp conflict in the testimony concerning whether it was written, mailed and received. Specific findings were not requested of the trial court, and none were made; but the general finding resolves this conflict of testimony in favor of defendants. In view of the subsequent correspondence between the parties concerning loss ratio, none of which would have been pertinent if this letter had been written by plaintiff and received by defendants, we cannot say that the court's conclusion was without evidence to sustain it.

Passing to the next principal question in the case. Were the con-

tingent commissions properly computed? It is not contended they were improperly computed, if the computation should be made on gross premiums or premiums paid for policies written. Appellant contends that the contingent premiums, if allowed at all, should be computed upon earned premiums, and at some detail advises us of the method of computation of earned premiums, and argues if computed on that basis no contingent premium was due unless, perhaps, for the year 1930. This takes us back to the contract as to what the contingent premium was. The proposed rewriting of the contract contained the clause in the original agency contract relating to commissions, followed by provision (a) ". . . that the commission stipulated in the preceding paragraph shall be increased. . . ." Now the commission provided in the preceding paragraph was based on gross premiums, less deductions for premiums returned on cancellations. Certainly paragraph (a) referred to the same kind of premiums as the preceding paragraph. And this is the provision definitely accepted by plaintiff's letters of February 28 and September 28, 1928. So it seems clear that the contingent premiums should be computed upon the gross premiums received in the annual period, as was done.

We find no error in the record, and the judgment of the court below is affirmed.

BURCH, J., not sitting.